Good morning, Your Honor. Please record. My name is Kevin Lund, and I represent Criden and Lund. We have not had this incident. I would like to try to return a couple minutes, but I'm not sure I will be able to do that. Again, I guess this is just the probable beginning. I have no hearing aids. My first oral argument is that some of the whistle-blowing were from Saudis on 9-10. So, please let me know if that's right. That's fine. Okay, thank you. This case arose out of a referral fee that Criden and Lund might have offered to their client, Miami Company, to Mr. Saveri, California, for a case that was going to be prosecuted in Maryland. It was being prosecuted in Maryland. Unfortunately, Saveri didn't pay the referral fee. So, you didn't have a signed agreement with Saveri. You had an agreement with Nathan Grazer, right? That is correct, Your Honor. And so, with Saveri, you just had a sort of one-sided, well, you're going to do this. We assume you're still going to pay the referral fee, and he didn't respond. Actually, Your Honor, our main cause of action is a plied-in fact, and the evidence to certainly do it into, like, perfectable, if not a perfect judgment, was that Mr. Saveri called out Mr. Love. In fact, he was my third person here. And the evidence in the record shows that he was dating Nathan Grazer, and several clients referred to Nathan Grazer that he was working on. The conversation turned to Mr. Saveri saying that he was going to go for a feed, representing our client, and that's what he wanted to do. Mr. Love responded by saying that it was fine. So, August, if you do, we expect you to pay a 12.5% referral fee. There was more conversation about some of the other referrals, and then what happened after that was that he ultimately filed a motion to amend the Grouping Council while representing our client. So, as Your Honor knows, under California law, a plied-in fact contract is an objective standard. It's what the conduct would be to a peaceful person. It's subjective intent. It's irrelevant. That's our main argument here. Yes. And, of course, the general rule on the merits from a factual issue, she got rid of the summary charge from the officer, and she got rid of our contract claims, which included a trustee warrant, which was as well unparalleled, based on Rule 2200. And that's what happened. Let's go back to the personal jurisdiction, which I take it is your main argument here. Is that right? Actually, no, Your Honor. I mean, obviously, if there's no personal jurisdiction, the deed is over. But you think there's no personal jurisdiction? Yes. Yes. On what basis? On what basis? Well, it's in the briefs. Well, in a nutshell. Give me the nutshell explanation of why there's no personal jurisdiction. Basically, you know, to exercise jurisdiction, I mean, what you have here are a contract with Mr. Severi that didn't require crime law to do anything in California, which is what you're supposed to focus on. But you have a referral business. You referred to the eraser report with Mr. Severi, and then you entered into sense of communications to Mr. Severi to try and further your referral business in California. Why does a man show a desire to use California to continue your referral business? Well, to look at it that way, we pretty much are misusing personal or specific jurisdiction. And you would get into general jurisdiction because any business does as a business. If I'm a business and I'm selling fish, am I going to be selling fish and referring it to this man, this company, this company, this company? So to say that if I have a disagreement with a company, you have to be able to say, well, you're in the fish business. And of course, if you came out of your fish business and you have all these other contacts out of your fish business, you can do that with any case. Right. Well, Mr. Braser and Mr. Severi are completely, Mr. Severi and Lothro are completely related. I mean, your argument that you have a contract with Mr. Severi is intimately related to how things started with Mr. Braser. I don't disagree with that. We would concede that the contract, the contract with Mr. Braser is related to the Severi contract. So that contract we would concede. But all of the other pro hocs and medial cases have absolutely nothing to do with detecting a dioxide case. You can rattle that. You do not concede those. Because if you did that, then any company would have jurisdiction. And, in effect, being a law firm, just any kind of action practice, you would automatically be, of course, would be able to exercise jurisdiction over that. And that can't be the case. There has to be more. So going back to your earlier question on contacts, you have the contract with Mr. Braser. You have a couple of phone calls. You have the contract with Mr. Severi. You have a couple of phone calls and e-mails. And that's it. That's it. Nothing to connect it to California. And your Honor knows better than anybody, because of all the competence we are, that that changes the landscape of what you're supposed to focus on. You don't focus on the person. It's not complete with the person in the form. But it's the context between the form. The other day, asking this attorney to take our client into practice, to engage in litigation in Maryland, we were asking him to work in California. We did say we were going to do that work in California. We were trying to invoke the privileges and benefits of California so as to the reason they expect to be hauled into California. So you had started with a New York law firm. I think you gave the opportunity to a New York law firm. And then they brought in, or they suggested Lisa Caprisa, and Lisa Caprisa reached out. So it was irrelevant, I guess, to try where the law firm was that was going to take, where it was geographically located. Is that correct? I understand your Honor's question. It didn't matter to us. It's very much in California. We've been in Alaska for all week here. The case was in Maryland. We had been in litigation for years at the time where the contract we're setting got created. Where were the clients located? All of the clients. Okay, so that means the plaintiffs, I guess. Well, to the point that we were for logic industries was Miami. Okay. Green, the one that was very much a focus of appearance in this issue, I believe it was a Minnesota corporation. And then we made a move, either to California. But, again, those two plaintiffs, they have absolutely nothing to do with the referral. They don't know Cronin and Love. They don't know the principles. They don't do logic industries. And, to be honest, they don't care. And that's the problem. If I can get you to 2400, is that under the district judge's interpretation, 2400, you're asking for clients who have absolutely no connection to the referral agreement to sign off on it. And as lawyers, we tell our clients all the time not to sign things that have nothing to do with you or that don't benefit you. Because if I would, Green, after 30 million years, sign something, what does it have to affect me? That's what it really comes down to, that the court needs to, I believe, respect that it needs to interpret 2,200 to make sense and to be feasible. Because the only client in a class action in this type of situation that has any interest in consenting to the division of fees or referral agreement is logic industries. So I just thought that 2,200 applies in class actions to the California court as you know. And there's also a published decision saying, so that means that all of the eight plaintiffs, they have to consent to the division. That's what my law firm tells me anyway. So it has certainly a reasonable extension of 2,200. Why isn't it? If 2,200 applies in a class action setting, and the lead counsel are the counsel for all of the eight plaintiffs, I guess all the unnamed plaintiffs too, which makes it questionable why 2,200 applies, but the California solicitor does. So why wouldn't he have to get the agreement of all of the eight plaintiffs? As a judicial matter, I'm not sure any court is at any way at risk with whether it applies to class actions. I think that, as one could find, it doesn't apply, although the courts certainly have applied it in class action situations and they've been able to do that. The general Indian Barnes, the California court would be able to apply it in a class action context. They did. Well, they didn't evaluate it, they didn't analyze it, but they nevertheless applied it. Yes. I mean, the argument that it applied in class action is, I think, below any reason here, but it's certainly an argument. It doesn't make sense. If you look at the purpose and reason behind 2,200, it just doesn't make sense for multi-plaintiff action. I mean, just to take a quick example, let's say there's a bus accident and there's 50 victims, and 49 go to the recipient, a lawyer in California, but one has a brother who's a corporate lawyer who goes there. He says, you can't handle it, so I want to send you to that lawyer. You send him, there's a referral. So does that mean the Rotototal Ledger requires that I get all 49 of those other people to sign off on his referral? I mean, why? There's no reason for them to do it. So, I mean, you're setting up a threshold that can't be met, and if that can't be met, then why would anybody ever do a referral? So that would be a question for the California courts, I assume. We have to anticipate what our California courts would rule on that. It's a California rule, and certainly the High Circuit has reclined on 2,200. I mean, Crockett's a good example where, you know, the Supreme Court held that if 2,200 invalidates the agreement, then the referring firm can still get a referral, make a law to bear it. That wasn't really based on it. California law, when the court interpreted 2,200, wasn't inconsistent with anything that the California courts had done. So I think you have the ability here, if you should reach the issue, to interpret 2,200 in a class action situation properly. I mean, one where it makes sense in practice where it can work. I mean, even in this case, you know, there's no question that we didn't think that we needed to create some consent, but if we had, you know, a decisionary allowance, again, why would Purdue sign off on something that doesn't affect him? And I hope that's a great issue. See, he doesn't. What happens if Saveri, who is his lawyer, teases him not to? We don't know, because that's a rift between client and lawyer. Then what happens? If Hillary Clinton is in a judicial situation where he doesn't even know any of the parties and doesn't know if Saveri is going to be in disciplining industries, why would Hillary Clinton have any interest in consenting? So it doesn't indicate any of the purposes behind 2,200. And certainly, again, there's certainly an interest in counsel who can't, for better or worse, handle a case that needs to refer it to another firm. So unless, you know, the court interprets each of my jokes in a certain way, there needs to be a balance. What's the basis for your budgetary review? Pretty simple, Your Honor. We think this is the clearest of all the interviews. That is, if 2,200 invalidates the contract claims, Huston's and the California Supreme Court has made it clear that you can't call the mayor in this court. Crockett made it clear and underscores that the High Circuit had sent it back two or three times. You say this is the value of the services rendered. So what's the value of the services you rendered? And who did you render them to? We rendered them to Saveri, to the $2-10 million person. So we have you right here. So this is the referral? It's the referral. That's just the service. In Crockett, as the court said, referrals have value. And although then that referring attorney had gotten money in that case from other sources for the warranty things, and the other side argued he's already gotten data from each of the services, this court sent it back to the trial court two or three times saying you're not getting it. The referral has a value separate from the money that he got from other services. The referral has a value. How do you value that? Does it rhyme with what the value is in dollars? According to the courts, you cannot value that based on the contract itself, because that wouldn't make sense. That would be inconsistent with 2200. But what you can do is that you can go and present evidence to the court of the customer usage in the industry, and that's exactly what we plan to do. The difference with the value of that referral is where it's in the market. For example, the contract value here for the referral is 12.8%. I believe the testimony will show that that's just unusual in the industry, in a class statute, especially in antitrust and mass eviction. Ten percent is the going rate. For the latest five or ten years, I think it's very good you can testify to that. So that is the base one. If that happened in Crockett, it might have happened in another case, what we call on something like Barron, it might have been in Lewis Crockett. But what the court was saying was, this is the penalty, if you will, that the referring counsel suffers because he's not getting the contract. And he referred... He's very brutal. No, I said industries. He filed a notice for Bray later on, and then he filed notices, his attorneys and his firm, for two other... for the other cases, and then he denies the industries. So he represented all three. So you, if I understand it, you gave a valuable right to the Bray Center, and so there it took that with emptying his law firm, is that what you're saying? I'm sorry? If he didn't refer anyone to the Savary Law Firm, you referred a client to Ethan Bray's firm. Well, we... It's not unusual to refer one client to another client in these type of cases. We originally referred the music industry to Ethan Bray's firm. We have a written contract with it. Mr. Savary was the head of the Unijoyce Dedication Department. He filed a complaint, saying that on behalf of Unijoyce Dedication, he's made a notice of appearance, and eventually he represented Isaac Industries. But that's the law firm, right? And it's actually just the law firm that's representing the client, not the individual lawyer, not California rules. It's not under the California rules, not the attorney represents and the firm represents. And I think that's disputed. Well, I think he still represented Isaac Industries. One of the issues was whether they filed a notice for withdrawal. When the amnesty said, I didn't think it would be prudent. So then he filed a notice of appearance on Bray, and then his attorney said his firm filed appearances for all three claims, which, as you say, under California law, means the Savary firm also represents all three claims. So, again, referral 2200 is interpreted in a way just more interpreted. It means that we would have somehow had to get not only Bray, but LEP, to rescind to a referral agreement with Isaac Industries and Mr. Savary. Okay, I'll leave your check. Is that allowed? Okay, good. Okay, thank you. Good morning, Your Honors. Robert Bunch on behalf of the Joseph Savary law firm, Joseph Savary. I'd like to discuss the quantum heroin. The ethical rules and the jurisdiction issues primarily. We start with the quantum heroin issue, since those were just being discussed by the panel. The council posited a couple of scenarios involving a bus accident and 49 other parties alike. Those aren't issues before this court. This court is faced with a fairly simple issue as to whether the plaintiff that was represented by my client should have consented to a division of my client's fee earned in that case. That's not the quantum heroin issue, is it? No, that was the role of the two other cases. They're related. Let me tie them together. The value of the services rendered here under California law is not the value of the referral to the payment procedure. As soon as we have that case record that says it is a element of value, Crockett arises under Nevada law, which is clearly different than California law. If you look at Crockett, and you read the case of 664 Fentherd 282, you'll see that it refers to the underlying case, the First Amendment Crockett, which is 583 Fentherd 1238. It clearly says that the value law applies. Under California law, it's clear that quantum heroin is not based on the value of the benefit to the preferring lawyer, but rather on the value of the services that were provided. That's the Magluca v. Magluca case. Referring to services provided to a firm. If that case then says, The Magluca case says that, in California quantum heroin, it's not the value of the benefit, but the value of the services. And here what we have... Because in this case, while there was no referral, as you run it on into Mr. Sperry from Mr. Krein, but if in a violation of 2-200, which is why they're connected, if the value of quantum heroin, which the husband's firm, or the husband's case, allowed by display of violation, or potential violation of 2-200, you would be accomplishing the benefit under the violation that the rule prescribes. And so the exception under a violation of 2-200 is to look to the value of the services, so that the lawyer provided the referral, his compensation for the legal work. That's what happened in Huskinson. I didn't read Huskinson to rule out referral fees. I mean, Huskinson basically said, Yes, 2-200 operates pretty harshly, but you can still get quantum heroin. If you look at 32 Calac 4, page 459, Huskinson clearly states that the reasonable value of the services is not a fee division, end quote. That's what would be happening here. All these percentages are in division of the fees. If you have violated 2-200, you would not, in quantum heroin, seek the division that is prescribed by the rule. That is a holding of the California Supreme Court. Unlike Nevada, California has grappled with this issue. Crockett is clearly not just positive on the issue. Is there any California case addressing something close to this one on referral fees? In terms of what issue? If a contract is invalidated under Rule 2-200, the party who provided the service of referring a client cannot get any value for that, cannot get any data for that. Well, I'd say the Huskinson firm does that. Certainly, Chambers v. Kaye, the California Supreme Court, said that Rule 2-200 applies to any division of fees. And Mardlin v. Shuperia said that  that is on point only if the referral service is deemed to be a division of fees. And so is there a case that holds that a referral is a division of fees for purposes of this rule? Yes, clearly, Chambers v. Kaye. Remember, it's how we're all saying that a referral fee, which the complainant signed a division of Mr. Kaye's fees, Weeks v. Macon v. McKenzie, The court asked about Rule 2-200 applying to class actions. Both for Barnes' case, which was discussed, and the case discussed within Barnes, which is called Barnes v. Spencer, which is 166 Calab 4th and 227, I'd say that consent is required in Rule 2-200 applying to class actions. So the busing council says that the court there didn't respond to a challenge to the applicability of 2-200 in a class action, so that specific issue, although it would implicitly be implied if they didn't actually address that challenge. What's the response to that? I think both the Barnes and Barnes v. Spencer case say that the 2-200 applies to class actions, but the circumstances in this case weren't presented. And, of course, California is applying a slightly different standard under the California Rules of Court with respect to the rules required for division of fees being disclosed in the class action settlement. That's the California Rule of Court 3.7698, which would absolutely require a California law that any agreement, such as the one that Mr. Kreidel and the Chief Appraiser agreed to, would have to be disclosed in the settlement process. I didn't see any discussion of that in the briefing. Did I miss that, or was that raised? It's raised within the Barnes case by a citation of Barnes v. Spencer. I'm trying to respond to the court's question about whether disclosure under 2-200 from the California side or compliance with 2-200 is required in the class action context. I don't think there's any question that it is. And we're talking about a fee division here under California law. If I could turn a moment as to why the signature and the consent of Mr. Green is important. First of all, it's undisputed that Green did not consent. And it's undisputed that all of the fees by Mr. Saveri and the Justice Saveri law firm were incurred at the time that Saveri was representing Green. That is, the work that the appraiser did after the referral fee arrangement with Kreidel was separately compensated. Kreidel was paid for that. Thereafter, Saveri is representing Green. All of the fees that were earned at that time are subsequent to and that are issued in this case. I understand how the class action would work because my understanding is the lead counsel, which Mr. Saveri was one, are representing all of the need plaintiffs who include Isaac Industries. And in fact, the fees they got were not from any individual client, but from a common client type deal. Is that correct? The... You see, it's partially correct, Your Honor. Up until the time of class certification, here beyond the settlement class, the lawyers are representing their named client representatives who are representatives of the class. And the vast bulk of work that was done here was in that time frame. But Saveri, then, was representing Isaac Industries because he was one of the lead counsel, or the law firm was one of the lead counsel, for that class. He had responsibilities to all of the class members, including Isaac Industries. His client, and he heard it in appearance, to that effect, in June of 2012, was for Green, not for Isaac. And that's in SCR 446. So as lead counsel, he was not representing all of the need plaintiffs? He was representing Green in the discovery and lead-up to the settlement of the case. And the court made clear, the district court made clear on its findings of fact that during all of that procedural work that was being done, Lisa Grazer and Mr. Crichton were representing Isaac Industries and Saveri had no contact with Isaac Industries. He was representing Green among the case co-counsel and that was the division of work. And what does it mean to be lead counsel for a class action? The responsibilities are defined in Rule 23. They require looking out for the interests of the entire class. But the attorney-client relationship here was with the deed plaintiff. And I think even if you assume that Mr. Saveri had some continuing obligation as a lead lawyer to Isaac Industries or to other members of the class, there's no dispute that Mr. Green, his client at that time, or Green Industries, excuse me, did not consent to the deed of issue. And that's the key issue here because it's that client relationship which Rule 2-200 seems to protect. It's the consumer here of the legal services, the client of the California lawyer, who needs to know, must know, whether his lawyer, that is, Mr. Saveri and his law firm, have agreed here on a sub-cilindral basis to divide the deed because the policy of Rule 2-200, which is well laid out in the case law in an unbroken line of cases, is that the client needs to know whether the deeds that are going to be charged or the deeds that are going to be artificially increased or the allegiance of the lawyer is going to be misplaced because there is some obligation to referring to the lawyer. Could you address why the court had personal jurisdiction over crime? Yes, Your Honor. The first thing I wanted to mention on that is that the purposeful direction test here was employed by the court. We think it's the right test to have used. If you look at the peripheral relief in the complaint that we filed at ER 000447, the primary relief sought was a preliminary and permanent injunction. That's the equitable relief. The second claim for relief was a declaration the plaintiffs have not agreed nor are obligated to pay any reportable fee to Criden. But the court had those two causes that actually related to the contract. So the first one was injunctive relief to enjoin Criden from proceeding with the arbitration because there wasn't any arbitration contract or any contract that required arbitration. And the second one was declaratory relief that there was no contract and, therefore, no obligation to pay a referral fee. And so I thought that with Pico v. Weston set about when a plaintiff... ...raises claims to determine whether there is a contract that counts as a contract complaint. Let me turn to Pico for a moment. And I think Pico is instructive, and I know that Judge Paez was... ...was on a hiatus. You were the author, which brought that opinion. And what the court did there was apply both the purposeful direction and the purposeful availment test because there were both equitable and declaratory claims in that case and potential contract cases. But here, both of the causes of action are claims for declaratory judgment as to the existence of a contract. We disagree with that, Your Honor. Pelley's claims do not arise from a contract or depend on the existence of a contract. They're primarily equitable claims. Neither the declaratory relief claim does not begin or end with a contract but rather construes Criden's equitable claims that exist in the absence of a contract or a court claim. There's a species of tort involved here with the commencement of an arbitration which is not a signatory in a foreign state and the service of that process is not signatory. It's related to a tort, Your Honor. It's not a contract claim. It's related to a tort. It's similar to what happened in the Yahoo case. But since you're familiar with the Yahoo case... That was a French order. That was an order from a French court. Right. Right. For the entity who received the order to take substantial steps in California to change the way they regulate their business. I didn't see how that was applicable to this. Well, the French court started a proceeding through a foreign jurisdiction similar to here with Criden starting a proceeding in Florida against a severity. But here the result would be instead of using California courts or arbitration it would be to bring your client into Florida. So it was using the Florida system of arbitration. What Judge Fletcher did in Yahoo was look at what the effects would be in California of the French court's submission of its order into California. It would require Yahoo to change the way it was running its business in California that it wouldn't affect the law firm in California. It would. Yahoo would create an expense in California and affect in California. And here... Well, this expense, in Walter D. Deoria's opposing counsel, indicated that that's not enough to create personal jurisdiction. The fact that the two gamblers would lose money and then they wouldn't have it to spend in Nevada was not enough to create personal jurisdiction and create a Supreme Court. Yes, but what's different here is the purposeful development in Walden, the agent, had no doubt, obviously, of where these individuals were going. And here, Mr. Criden, nor did the agent in Walden send his affidavit, which I think went to Georgia, to California. Here, Criden actually sent the process of the arbitration and the proceeding into California and created a harm and injury in California, which the court, the district court, found to be harm in California. Mr. Severio was required to hire counsel in California, was required to respond in California, and would lose time and resources to injury being felt by his law firm in California, which I think gets to a critical point of the jurisdictional analysis here, and that is the standard of review for this. We have a situation where if there was a motion to dismiss for lack of personal jurisdiction, and all this arbitration was pending, the motion is denied, then the arbitration is dismissed, and Criden takes all of the claims from the arbitration and puts them into district court. As a consequence, he never litigates that the issue of jurisdiction thereafter will be moved for summary judgment after full discovery in the case. He did not impose the motion for summary judgment on the basis of personal jurisdiction. We're pursuing Criden's claim. Criden already rose, though. His second complaint was, right? I don't think it would have been Criden. They reserved their right. They reserved their right. And so now it's on appeal. So now we're going to consider it. Well, but what's happened, I think there's a practical measure, and that's why in the Peterson v. Highland case and the other cases we've cited talk about the lower threshold here for affirming the district court, you know, on a time-efficient basis. Because this issue wasn't raised in the district court beyond the pleading stage, there was no record established with respect to, or a huge record established with respect to the relationship between all of these various 19 other cases that Criden and the appraiser and others have ran the rise out of the referral fee business. And that would have been explored if that was a basis for a close and summary judgment. That was that. All right. Thank you very much. Thank you. Do you have a minute? A minute? Yes. Okay. Quickly. Jurisdiction. Square Notice has addressed each account of the DEC action and the arbitration claim separately. The DEC action, the district judge didn't have the code, which came about after she issued her opinion. It was the court made it clear as to the existence of the contract, that it's a healthy contract. As to the arbitration, I don't think you discussed it well. It's not a tort. In fact, the kind of case I was preparing for hearing is the Sutherland case, 2009, was Law 324-8127. It was in front of similar allegations to Petrosian AAA arbitration. And the arbitration is trying to restrict your contract distribution agreement. The court said, well, that really sounds like a contract. Quantum narrowing. Counsel has made the same argument, maybe the briefs have been cleared out, that quantum narrowing is the same under Nevada. And California law, you asked, Your Honor, whether there's an opinion out there in California law that applied quantum narrowing as a referral to California law. And I did find one after. You did? It's a claim as the referral. That's the basis for quantum narrowing. That's the service that you would perform. What's the referral? The referral that you would identify as the referral to lethal compressor. No, to Severi. Well, to Severi and lethal compressor. And to Bergamonte. I mean, there were a couple firms. So she decided, usually, to refer a claim to you. At the end of the... Severi leaves. Right. It's an awfully big settlement. There's a lot of money allocated towards attorney fees. And you've got paid by a heathen's razor for your referral fee. Is that correct? Yes, Your Honor. Why doesn't he take care of the problem? That was the case for the lawsuit. Is it that Severi spent $10 billion that he got is that on top of what lethal compressor is designed to do? $54 million of fees. That's the total amount of fees. It's like $168,000. It's a very good settlement. So I don't know if there was a rule about not referring claims to more than one firm. That would be one thing. But there is no rule against that. These firms are specialized in prosecuting antitrust lawsuits and actions. But the problem is, they don't have clients. Because you need a direct purchaser. And that's what we have, a very client-based clients that we can refer out. So we refer them to different... I know, I know. Very interesting. That's how it works. It's always interesting. And that's how we make our money is that we get referrals from different firms. And if these firms don't provide our clients, even if they don't get in, he still goes to pay us a million, too. He gets to keep the rest. That's why he wants the referral. That's why he goes to client. I was going to... So if you could just make sentences real quick because they're not in. It came out of the briefing. The GRD funding, in answer to your question, Your Honor, said it was a referral case. It has to do with malicious prosecution. But in the midst of the analysis, the court said, it's a California bill of court, said it's a verdict lease that the plaintiff, the referring firm, could assert entitlement to quantum error recovery under California law that suits the California quantum error case. If you had not given those signatures to the unit counsel, you should have been declared free. That's what I claimed to do after the... or argued to do it. It was a supplemental citation. I think you're allowed to do it by hand, right? Okay. And then, last, real quick, if the case that your clerk found, and I also found it in awe, I would say is that although it does sort of say that it should apply to all name claims, if you read the opinion, it doesn't... it looks like those name claims were all referred by that attorney. So that's, you know, it doesn't... there's a significant proposition that you have to get some consent from name claimants unless referred by the referring attorney. So, that's my opinion. Thank you so much for your attention. Thank you guys. I appreciate your arguments. It was an interesting case matter today.
judges: Paez, Ikuta, Faber